**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **KEVIN COIT,** | : | |
| **Plaintiff** | : | |
| | : | **No. 1:17-cv-1438** |
| **v.** | : | |
| | : | **(Judge Kane)** |
| **MR. GARMAN, et al.,** | : | |
| **Defendants** | : | |

## MEMORANDUM

## I. BACKGROUND

Pro se Plaintiff Kevin Coit ("Plaintiff"), an individual currently confined at the State Correctional Institution Smithfield in Huntingdon, Pennsylvania ("SCI Smithfield"), initiated the above-captioned action by filing a complaint pursuant to 42 U.S.C. § 1983 on August 14, 2017, asserting claims of excessive force, sexual assault, failure to protect, excessive cell searches, unconstitutional conditions of confinement, retaliation, and denial of access to the courts in violation of the First and Eighth Amendments to the United States Constitution. (Doc. No. 1.) Plaintiff asserts that these violations occurred while he was incarcerated at SCI Rockview in Pennsylvania. (Id.) On September 6, 2017, the Court granted Plaintiff leave to proceed in forma pauperis and directed service of his complaint on Defendants Mr. Garman ("Garman"), Mr. Pasquale ("Pasquale"), Mr. Hashenberger ("Harshbarger"), Lt. Gates ("Gates"), Lylttle ("Lytle"), Sergeant Clevland ("Cleveland"),[1] C.O. Condo ("Condo"), CO Florey ("Florey"), CO Conklin ("Conklin"), CO Seymour ("Seymour"), CO Ward ("Ward"), CO Edwards ("Edwards"),

---

[1] Defendants' filings clarify that the correct spelling of Defendants Hashenberger, Lylttle, and Cleveland's last names is Harshbarger, Lytle, and Cleveland, respectively. The Court therefore will direct the Clerk of Court to amend the docket to reflect the correct spelling.

and Hearing Examiner Pilosi ("Pilosi").  (Doc. No. 7.)  Defendants filed their answer on December 7, 2017.  (Doc. No. 27.)

After engaging in discovery, Defendants filed a motion for summary judgment (Doc. No. 52) and supporting materials (Doc. Nos. 53, 60).  Plaintiff subsequently filed a brief in opposition (Doc. No. 65), statement of facts (Doc. No. 66), and exhibits (Doc. No. 68). Defendants then filed a reply brief.  (Doc. No. 69.)  On February 25, 2019, Plaintiff filed a motion requesting leave to refile his brief in opposition (Doc. No. 75), as well as his proposed corrected brief (Doc. No. 77).  In an Order dated April 2, 2019, the Court granted Plaintiff's motion and directed Defendants to file any reply brief they wished to file within seven (7) days. (Doc. No. 79.)  After receiving an extension of time, Defendants filed their reply brief on April 19, 2019.  (Doc. No. 82.)

On May 2, 2019, observing that Defendants raised the issue of whether Plaintiff exhausted his administrative remedies with respect to certain in accordance with the Prison Litigation Reform Act ("PLRA"), the Court issued a <u>Paladino</u> Order informing the parties that it would consider the exhaustion issue in the context of summary judgment and, by doing so, would consider matters outside the pleadings in its role as factfinder.[2]  (Doc. No. 83.)  The Court provided Defendants fourteen (14) days to "amend or supplement their materials to further address whether Plaintiff has exhausted his administrative remedies."  (<u>Id.</u>)  The Court further noted that Plaintiff should file a brief in opposition addressing the issue of administrative exhaustion, as well as a statement of material facts specifically responding to Defendants'

---

[2] <u>See</u> <u>Paladino v. Newsome</u>, 885 F.3d 203 (3d Cir. 2018).

statement, within twenty-one (21) days from the date that Defendants filed any amended or supplemental materials.  (<u>Id.</u>)

Defendants had until May 16, 2019 to amend or supplement their materials to further address the issue of administrative exhaustion.  Defendants, however, did not file any supplemental materials.  Accordingly, because there are no supplemental materials for Plaintiff to respond to, Defendants' motion for summary judgment is ripe for resolution.

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 56(a) requires the Court to render summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  <u>See</u> Fed. R. Civ. P. 56(a).  "[T]his standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact."  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247-48 (1986).

A disputed fact is "material" if proof of its existence or nonexistence would affect the outcome of the case under applicable substantive law.  <u>See</u> <u>id.</u> at 248; <u>Gray v. York Newspapers, Inc.</u>, 957 F.2d 1070, 1078 (3d Cir. 1992).  An issue of material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  <u>See</u> <u>Anderson</u>, 477 U.S. at 257; <u>Brenner v. Local 514, United Bhd. of Carpenters & Joiners of Am.</u>, 927 F.2d 1283, 1287-88 (3d Cir. 1991).

When determining whether there is a genuine issue of material fact, the Court must view the facts and all reasonable inferences in favor of the nonmoving party.  <u>See</u> <u>Moore v. Tartler</u>, 986 F.2d 682 (3d Cir. 1993); <u>Clement v. Consolidated Rail Corp.</u>, 963 F.2d 599, 600 (3d Cir. 1992); <u>White v. Westinghouse Elec. Co.</u>, 862 F.2d 56, 59 (3d Cir. 1988).  In order to avoid

summary judgment, however, the nonmoving party may not rest on the unsubstantiated allegations of his or her pleadings. When the party seeking summary judgment satisfies its burden under Rule 56 of identifying evidence that demonstrates the absence of a genuine issue of material fact, the nonmoving party is required to go beyond his pleadings with affidavits, depositions, answers to interrogatories or the like in order to demonstrate specific material facts that give rise to a genuine issue. See Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). The party opposing the motion "must do more than simply show that there is some metaphysical doubt as to the material facts." See Matsushita Elec. Indus. Co. v. Zenith Radio, 475 U.S. 574, 586 (1986). When Rule 56 shifts the burden of production to the nonmoving party, that party must produce evidence to show the existence of every element essential to its case that it bears the burden of proving at trial, for "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." See Celotex, 477 U.S. at 323; see also Harter v. G.A.F. Corp., 967 F.2d 846, 851 (3d Cir. 1992).

   In determining whether an issue of material fact exists, the Court must consider the evidence in the light most favorable to the nonmoving party. See White, 862 F.2d at 59. In doing so, the Court must accept the nonmovant's allegations as true and resolve any conflicts in his favor. See id. (citations omitted). However, a party opposing a summary judgment motion must comply with Local Rule 56.1, which specifically directs the oppositional party to submit a "statement of the material facts, responding to the numbered paragraphs set forth in the statement required [to be filed by the movant], as to which it is contended that there exists a genuine issue to be tried"; if the nonmovant fails to do so, "[a]ll material facts set forth in the statement required to be served by the moving party will be deemed to be admitted." See L.R. 56.1. A party cannot evade these litigation responsibilities in this regard simply by citing the fact that he

is a pro se litigant. These rules apply with equal force to all parties. See Sanders v. Beard, Civ. No. 09-1384, 2010 WL 2853261, at *5 (M.D. Pa. July 20, 2010) (stating that pro se parties "are not excused from complying with court orders and the local rules of court"); Thomas v. Norris, Civ. No. 02-01854, 2006 WL 2590488, at *4 (M.D. Pa. Sept. 8, 2006) (explaining that pro se parties must follow the Federal Rules of Civil Procedure).

## III. DISCUSSION

### A. Statement of Material Facts[3]

#### 1. Facts Regarding the Pennsylvania Department of Corrections ("DOC") Grievance Procedure

---

[3] The Local Rules provide that in addition to the requirement that a party file a brief in opposition to the moving party's brief in support of its motion, "[t]he papers opposing a motion for summary judgment shall include a separate, short and concise statement of material facts responding to the numbered paragraphs set forth in the statement [of material facts filed by the moving party] . . . as to which it is contended that there exists a genuine issue to be tried." See M.D. Pa. L.R. 56. 1. The Rule further requires the inclusion of references to the parts of the record that support the statements. See id. Finally, the Rule states that the statement of material facts required to be served by the moving party will be deemed to be admitted unless controverted by the statement required to be served by the opposing party. See id. Unless otherwise noted, the background herein is derived from Defendants' Rule 56.1 statement of material facts. (Doc. No. 53.)

Plaintiff did not comply with M.D. Pa. L.R. 56.1 in that he failed to respond specifically to the numbered paragraphs in Defendants' statement of material facts. Rather, Plaintiff filed his own statement of material facts without regard to that of the Defendants. (Doc. No. 66.) Plaintiff subsequently filed a corrected brief in opposition in which he admits a number of facts and denies a number of others. (Doc. No. 77.) However, Plaintiff fails to cite the record to support those facts he opposes. While Plaintiff's verified complaint (Doc. No. 1) may be treated as an affidavit in opposition to the motion for summary judgment, the allegations must be based on personal knowledge, and this Court is not "required to accept unsupported, self-serving testimony as evidence sufficient to create a jury question." See Hammonds v. Collins, Civ. No. 12-236, 2016 WL 1621986, at *3 (M.D. Pa. Apr. 20, 2016) (citing Brooks v. Am. Broad. Co., 999 F.2d 167, 172 (6th Cir. 1993)). Accordingly, unless otherwise noted, the Court deems the facts set forth by the Defendants to be undisputed. See M.D. Pa. L.R. 56. 1; Fed. R. Civ. P. 56(e)(2); Bowman v. Mazur, Civ. No. 08-173J, 2010 WL 2606291, at *3 (W.D. Pa. Oct. 30, 2010) ("Plaintiff's responsive statement of material facts is insufficient to create a genuine issue of material fact because it failed to comply with Local Rule 56.1.").

DOC policy DC-ADM 804 provides that an inmate may file a grievance when "personally affected by a Department or institutional action or policy or by the action of a Department employee." (Doc. No. 53 ¶ 63.) A grievance must be submitted, in writing, to the Facility Grievance Coordinator at the facility where the events complained of occurred, using the grievance form available on all housing units and blocks. (Id. ¶¶ 63-64.) A grievance must be submitted within fifteen (15) working days from the event upon which it is based. (Id. ¶ 63.) The grievance must: (1) include a statement of relevant facts; (2) identify anyone who may possess information that could assist in resolving the grievance; and (3) specifically state any claims "concerning violations of Department directives, regulations, court orders, or other law." (Id. ¶ 65.) Upon receipt, the Facility Grievance Coordinator "assign[s] a properly submitted grievance to a grievance officer not involved in the case to make a written response to the grievant." (Id. ¶ 66.) The Facility Grievance Coordinator reviews the response before it is provided to the inmate. (Id.)

An inmate may appeal the initial response to the Facility Manager (Superintendent). (Id. ¶ 67.) The Facility Manager then provides a written response to the inmate. (Id. ¶ 68.) The Facility Manager "may uphold the response, uphold the inmate, dismiss, dismiss as untimely, or uphold in part/deny in part." (Id.) The Facility Manager can also choose to remand the initial response to the grievance officer for further investigation or reconsideration. (Id.)

An inmate may appeal the Facility Manager's response to final review by the Secretary's Office of Inmate Grievances and Appeals ("SOIGA") within fifteen (15) working days of the date of the Facility Manager's decision. (Id. ¶ 69.) Only issues appealed to the Facility Manager may be appealed to SOIGA. (Id.) SOIGA then reviews the grievance, the initial response, the appeal to the Facility Manager and the Facility Manager's response, any relevant investigative

reports, and the appeal to final review.  (Id. ¶ 70.)  SOIGA "may uphold the response, uphold the

inmate['s argument], dismiss the appeal, dismiss as untimely or uphold in part/deny in part."  (Id.

¶ 71.)  SOIGA maintains a copy of its response and provide a copy of the response to the inmate

and the Facility Manager.  (Id.)  "An inmate has not properly completed the grievance procedure

unless he properly appeals his grievance to" SOIGA.  (Id.)

## 2.    Facts Regarding the Handcuff Incident

On February 24, 2017, Plaintiff refused to allow Defendants Cleveland and Condo to pat-

search him while he was outside of his cell.  (Id. ¶ 3.)  Plaintiff went back inside his cell but

refused to have the handcuffs removed.  (Id. ¶ 4.)  Accordingly, a tether was attached to the

handcuffs.  (Id.)  Defendants Cleveland and Condo held the tether and struggled to remove

Plaintiff's handcuffs through the aperture of his closed cell door.[4]  (Id. ¶ 5.)  After the handcuffs

were removed, Plaintiff refused to put his hands and arms back inside the cell.  (Id. ¶ 6.)  After a

struggle, Defendants Cleveland and Condo successfully pushed Plaintiff's hands and arms back

into the cell.  (Id. ¶ 7.)

Less than four (4) minutes later, a corrections officer observed Plaintiff cutting himself

with an object.  (Id. ¶ 8.)  When asked, Plaintiff confirmed that he had been cutting himself.  (Id.

¶ 9.)  Two (2) minutes later, an officer arrived and asked Plaintiff if he wanted to go to the

medical department.  (Id. ¶ 10.)  Plaintiff was ultimately removed from his cell and taken to the

---

[4] Plaintiff maintains that Defendant Cleveland "violently" pulled the tether to force his wrists out
of the cell door's tray slot.  (Doc. No. 1 ¶ 9.)  He asserts that Defendant Cleveland then reached
into the slot, tightened the handcuffs, and bent Plaintiff's thumbs back in an attempt to break
them.  (Id. ¶ 10.)  Plaintiff further maintains that Defendant Cleveland pulled down his pants and
inserted an "unknown object" into his rectum.  (Id. ¶ 11.)  After several minutes, Defendant
Cleveland asked Defendant Gates for assistance, and Defendant Gates used O/C spray on
Plaintiff while Defendants Cleveland and Condo were "yanking" the tether "violently."  (Id.
¶¶ 12-13.)

medical department. (Id. ¶ 11.) On March 17, 2017, a report of the incident was completed. (Id. ¶ 12.)

### 3. Facts Regarding Plaintiff's Cell Conditions and Searches and Allegations of Abuse, Harassment, and Retaliation

Plaintiff's cell was searched on February 24, 2017.[5] (Id. ¶ 13.) On March 3, 2017, the grievance coordinator received grievance 667858 from Plaintiff, in which Plaintiff complained about what happened on February 24, 2017. (Id. ¶ 14.) On March 6, 2017, the grievance coordinator received grievance 667721 from Plaintiff, in which Plaintiff raised claims of abuse, harassment, and threats by corrections officers. (Id. ¶ 16.) On March 9, 2017, Plaintiff withdrew grievance 667858 and an allegation of abuse. (Id. ¶ 15.) Grievance 667721 was ultimately denied, and Plaintiff's appeal was dismissed as untimely. (Id. ¶¶ 17-18.) On final appeal, the dismissal of Plaintiff's appeal as untimely was upheld. (Id. ¶ 18.)

On March 13, 2017, Plaintiff submitted grievance 668547, claiming that he had been assaulted by another inmate and that corrections officers had failed to protect him. (Id. ¶ 19.) The grievance was denied, and Plaintiff's appeal of the denial was dismissed as untimely. (Id. ¶¶ 20-21.) The dismissal of Plaintiff's appeal as untimely was upheld in his final appeal.[6] (Id. ¶ 21.) On April 14, 2017, the grievance coordinator received grievance 673645, in which Plaintiff claimed that he had been placed in a cell covered in feces and had been abused by corrections officers. (Id. ¶ 46.) The grievance was also denied, and Plaintiff did not appeal. (Id. ¶ 47.)

---

[5] Plaintiff maintains that his cell was searched on February 24, 2017, March 9, 2017, April 3, 2017, and April 4, 2017. (Id. ¶¶ 21, 27, 47, 49.)

[6] Plaintiff admits his appeal was denied as untimely but maintains that he was "stonewalled" by Defendants. (Doc. No. 77 at 3.)

On April 17, 2017, the grievance coordinator received grievance 673563, in which Plaintiff raised claims of harassment, retaliation, and excessive cell searches.[7] (Id. ¶ 48.) After the grievance was denied, the denial was upheld at both appellate stages. (Id. ¶ 49.) On May 22, 2017, the grievance coordinator received grievance 678886, in which Plaintiff raised claims of threats of abuse, harassment, and retaliation by correctional officers. (Id. ¶ 58.) Similar to his other grievances, this grievance was denied, and Plaintiff's appeal to the facility manager was also dismissed as untimely. (Id. ¶ 59.) On June 6, 2017, the grievance coordinator received grievance 681148, in which Plaintiff again raised claims of harassment and retaliation. (Id. ¶ 60.) This grievance was rejected for not being submitted within fifteen (15) days of the events of which Plaintiff complained. (Id. ¶ 61.) On appeal, the facility manager upheld the rejection, and the appeal to final review was dismissed because Plaintiff had not provided required or legible documentation for review. (Id. ¶ 62.)

### 4. Facts Regarding Plaintiff's Assault by Another Inmate

On March 22, 2017, Plaintiff was assaulted and stabbed by another inmate while in SRTU Room 102.[8] (Id. ¶ 22.) Three (3) corrections officers immediately responded and separated Plaintiff from the other inmate.[9] (Id. ¶ 23.) Plaintiff received medical attention for his

---

[7] Plaintiff contends that during these searches, corrections officers destroyed or attempted to destroy his legal property. (Doc. No. 1 ¶¶ 20, 32, 60, 72.)

[8] Plaintiff maintains that on this date, he was attending his mental health group when the other inmate entered the room uncuffed and began arguing with him. (Id. ¶ 39.) He contends that the other inmate threatened to stab him and that Defendant Florey overheard this threat. (Id. ¶¶ 39-40.) Plaintiff asked to leave, and Defendant Florey began to escort Plaintiff while the other inmate was still present and uncuffed. (Id. ¶ 40.) As Plaintiff walked by the other inmate, the other inmate stabbed Plaintiff in the back of the head. (Id. ¶ 41.)

[9] Plaintiff maintains that Defendant Florey "slammed" him to the ground and placed shackles and a spit mask on him. (Id. ¶¶ 42-43).

injuries.  (Id. ¶ 24.)  On March 23, 2017, the Facility Grievance Coordinator received grievance 670073, in which Plaintiff claimed that the assault and stabbing resulted from corrections officers' failure to protect him.  (Id. ¶ 25.)  The grievance was denied, and that decision was upheld through both levels of appeal.  (Id. ¶ 26.)  On March 23, 2017, the Facility Grievance Coordinator received grievance 670072, in which Plaintiff raised claims of harassment, threats, retaliation, and destruction of legal documents by corrections officers.[10]  (Id. ¶ 27.)  The grievance was also denied, and that denial was upheld by the Facility Manager.  (Id. ¶ 28.)  On final review, SOIGA dismissed the grievance as untimely.  (Id. ¶ 29.)

### 5.    Facts Regarding Plaintiff's Cell Extraction for Medical Assessment

On April 10, 2017, Plaintiff refused to be assessed by medical staff.  (Id. ¶ 30.) Corrections officers planned to take Plaintiff to the medical department to be monitored because he had refused ten (10) consecutive meals.  (Id. ¶ 31.)  Accordingly, an extraction team was assembled and briefed.  (Id. ¶ 32.)  When the extraction team arrived at his cell, Plaintiff complied with orders to leave.  (Id. ¶ 33.)  He was placed in a restraint chair and escorted to the medical department without incident.[11]  (Id. ¶¶ 34-35.)

After arriving at the medical department, Plaintiff was removed from the restraint chair and placed in TBO cell 101.  (Id. ¶ 36.)  At this time, he refused a medical assessment.  (Id.) After medical staff took photographs, Plaintiff refused to comply with orders to change into an

---

[10] Plaintiff maintains that after he was taken to medical for treatment after the assault, he was returned to his cell.  (Id. ¶ 44.)  He asserts that his cell was "trashed" because his legal mail "was ripped up and scattered all over the cell floor."  (Id.)  He also maintains that several items, including legal mail, were missing.  (Id.)

[11] Plaintiff claims that during the escort to the medical department, an unnamed corrections officer punched him in the back of the head, called him names, and threatened him.  (Id. ¶ 63; Doc. No. 77 ¶ 35.)

anti-suicide smock; therefore, it was ordered that his clothes be cut off with shears. (Id. ¶ 37.) As officers started to cut away Plaintiff's clothes, Plaintiff became aggressive, shouting for them to stop twisting his wrist and to remove a finger from his eye. (Id. ¶ 38.) As the smock was placed on Plaintiff, he began "to yell at the officers, 'get your finger out of my ass.'" (Id. ¶ 40.) Video of the incident, however, shows that Plaintiff's wrists were not twisted and that nothing was placed in his eye or his rectum.[12] (Id. ¶¶ 39, 41.) Plaintiff attempted to move away from the officers, and they placed him on the ground to regain control. (Id. ¶ 42.) Once they regained control of him, officers placed Plaintiff on the cell bed to put the smock on and to have more medical photographs taken. (Id. ¶ 43.) Plaintiff told the officers that he was going to start spitting, so they placed a spit hood on him. (Id. ¶ 44.) Subsequently, the officers removed Plaintiff's shackles and spit hood and left him in the medical cell. (Id. ¶ 45.)

On April 24, 2017, the grievance coordinator received grievance 674828, in which Plaintiff claimed that the officers had used excessive force against him during the April 10, 2017 incident. (Id. ¶ 54.) The grievance was denied, and Plaintiff's appeal to the facility manager was dismissed as untimely. (Id. ¶ 55.) Plaintiff returned from medical on May 16, 2017 and was moved into cell GA-1002.[13] (Id. ¶ 56.)

### 6. Facts Regarding Plaintiff's Misconduct Hearing

Plaintiff appeared before Defendant Pilosi for a misconduct hearing on April 17, 2017. (Id. ¶ 51.) This misconduct hearing involved three (3) separate incidents, including Plaintiff's "combative behavior towards the officers during the April 10, 2017 escort to medical." (Id.

---

[12] Plaintiff maintains that he was punched, kicked in the face, and sexually assaulted during this incident. (Doc. No. 1 ¶¶ 64-66.)

[13] Plaintiff contends that this cell had blood and feces on the wall and that while housed there, he had no blanket or sheets, no water, and little food. (Id. ¶¶ 90-93.)

¶ 52.)  The misconduct involving the events of April 10, 2017 was dismissed without prejudice.  (Id. ¶ 53 n.3.)  For the other two misconducts, Plaintiff was sanctioned to 180 days of loss of privileges and 180 days of disciplinary custody.  (Id. ¶ 53.)

**B.      Defendants' Motion for Summary Judgment**

**1.      Exhaustion of Administrative Remedies**

Defendants first argue that they are entitled to summary judgment as to Plaintiff's claims regarding denial of access to the courts, unconstitutional conditions of confinement, sexual assault, and excessive force because Plaintiff failed to exhaust his administrative remedies as to these claims.  (Doc. No. 60 at 18-22.)  Pursuant to the PLRA, a prisoner must pursue all available avenues of relief through the applicable grievance system before initiating a federal civil rights action.  See 42 U.S.C. § 1997e(a); Booth v. Churner, 532 U.S. 731, 741 n.6 (2001) ("[A]n inmate must exhaust irrespective of the forms of relief sought and offered through administrative avenues.").  Section 1997e provides, in relevant part, that "[n]o action shall be brought with respect to prison conditions under [S]ection 1983 of this title, or any other [f]ederal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  See 42 U.S.C. § 1997e(a).  The exhaustion requirement is mandatory.  See Williams v. Beard, 482 F.3d 637, 639 (3d Cir. 2007); see also Booth, 532 U.S. at 742 (holding that the exhaustion requirement of the PLRA applies to grievance procedures "regardless of the relief offered through administrative procedures").

The United States Court of Appeals for the Third Circuit has further provided that there is no futility exception to Section 1997e's exhaustion requirement.  See Nyhuis v. Reno, 204 F.3d 65, 75-76 (3d Cir. 2000).  Courts have typically required across-the-board exhaustion by inmates seeking to pursue claims in federal court.  See id.  Additionally, courts have interpreted this

exhaustion requirement as including a procedural default component, holding that inmates must fully satisfy the administrative requirements of the inmate grievance process before proceeding with a claim in federal court. See Spruill v. Gillis, 372 F.3d 218 (3d Cir. 2004); see also Oriakhi v. United States, 165 F. App'x 991, 993 (3d Cir. 2006) (providing that "there appears to be unanimous circuit court consensus that a prisoner may not fulfill the PLRA's exhaustion requirement by exhausting administrative remedies after the filing of the complaint in federal court"). Courts have also concluded that inmates who fail to complete the prison grievance process in a full and timely manner are barred from subsequently litigating claims in federal court. See, e.g., Booth v. Churner, 206 F.3d 289 (3d Cir. 2000); Bolla v. Strickland, 304 F. App'x 22 (3d Cir. 2008).

This broad rule favoring full exhaustion allows for a narrowly-defined exception; if the actions of prison officials directly caused the inmate's procedural default as to a grievance, the inmate will not be required to comply strictly with this exhaustion requirement. See Camp v. Brennan, 219 F.3d 279 (3d Cir. 2000). However, courts also recognize a clear "reluctance to invoke equitable reasons to excuse [an inmate's] failure to exhaust as the statute requires." See Davis v. Warman, 49 F. App'x 365, 368 (3d Cir. 2002). Thus, an inmate's failure to exhaust will be excused only "under certain limited circumstances," see Harris v. Armstrong, 149 F. App'x 58, 59 (3d Cir. 2005), and an inmate may defeat a claim of failure to exhaust only by showing "he was misled or that there was some extraordinary reason he was prevented from complying with the statutory mandate." See Warman, 49 F. App'x at 368.

In the absence of competent proof that an inmate was misled by corrections officials, or some other extraordinary circumstances warranting a departure from strict compliance with the exhaustion requirement, courts frequently reject inmate requests for their failure to exhaust to be

excused. An inmate, therefore, cannot excuse a failure to comply with these grievance procedures in a timely manner by simply claiming that his efforts constituted "substantial compliance" with this statutory exhaustion requirement. <u>See</u> <u>Harris</u>, 149 F. App'x at 59. Furthermore, an inmate cannot avoid this exhaustion requirement by merely alleging that the administrative policies were not clearly explained to him. <u>See</u> <u>Warman</u>, 49 F. App'x at 368. Consequently, an inmate's confusion regarding these grievances procedures does not, alone, excuse a failure to exhaust. <u>See</u> <u>Casey v. Smith</u>, 71 F. App'x 916 (3d Cir. 2003); <u>see also</u> <u>Marsh v. Soares</u>, 223 F.3d 1217, 1220 (10th Cir. 2000) ("[I]t is well established that 'ignorance of the law, even for an incarcerated <u>pro</u> <u>se</u> petitioner, generally does not excuse prompt filing.'" (citations omitted)).

Recently, the Supreme Court considered what renders administrative remedies unavailable to an inmate such that a failure to exhaust can be excused. <u>See</u> <u>Ross v. Blake</u>, 136 S. Ct. 1850 (2016). The Court noted "three kinds of circumstances in which an administrative remedy, although officially on the books, is not capable of use to obtain relief." <u>See</u> <u>id.</u> at 1859. First, an administrative procedure is not available "when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." <u>See</u> <u>id.</u> Second, a procedure is not available when it is "so opaque that it becomes, practically speaking, incapable of use." <u>See</u> <u>id.</u> Finally, a procedure is unavailable when "prison administrators thwart inmates from taking advantage of a grievance process through machination, misinterpretation, or intimidation." <u>See</u> <u>id.</u> at 1860.

Defendants argue that Plaintiff's grievance record demonstrates that he failed to exhaust his administrative remedies properly as to his claims regarding access to the courts, conditions of

confinement, sexual assault, and excessive force prior to filing the instant action. (Doc. No. 60 at 18-22.) Defendants have submitted a declaration from Keri Moore, the Assistant Chief Grievance Officer for SOIGA, in support of their motion. (Doc. No. 53-4 at 2-7.) Moore's declaration indicates that of all the grievances Plaintiff submitted in relation to this action, he fully exhausted only two (2) of them, grievances 670073 and 673563. (Id. ¶¶ 16, 19.) Grievance 670073 concerned Plaintiff's assault by another inmate on March 22, 2017. (Id., Ex. E.) Grievance 673563 involved Plaintiff's claims of excessive cell searches and retaliation by corrections officers. (Id., Ex. K.) Plaintiff's remaining relevant grievances were not fully exhausted either due to Plaintiff bringing untimely appeals or not filing an appeal at all. (Id. ¶¶ 14-15, 21-23.) As noted above, untimely "or otherwise procedurally defective administrative grievance[s] or appeal[s]" do not satisfy the PLRA's mandatory exhaustion requirement. See Woodford, 548 U.S. at 83; see also Spruill, 372 F.3d at 230.

In his brief in opposition, Plaintiff argues that the Court should waive the exhaustion requirement because he was "stonewalled" by Defendants and he never received responses to many of his grievances. (Doc. No. 77 at 3, 8-9.) Plaintiff references "request slips to [the] grievance coordinator" in support of his argument. (Id. at 3.) Plaintiff submitted 284 pages of exhibits to support his opposition to summary judgment. (Doc. No. 68.) In their reply brief, Defendants assert that "it is not the Court's job to become a 21st century Indiana Jones, diving deep into the forests of hundreds of pages of worth of documents that Plaintiff foisted upon the docket." (Doc. No. 82 at 2.) Thus, Defendants argue, Plaintiff's general reference to "request slips to grievance coordinator" is insufficient to overcome summary judgment because he fails to cite to the record in contravention of Local Rule 56.1. (Id.)

The Court is not persuaded by Defendants' argument that they are entitled to summary judgment with respect to the issue of exhaustion solely due to Plaintiff's technical non-compliance with Local Rule 56.1.  The Court has reviewed the many request slips and letters to staff Plaintiff submitted to support his opposition to summary judgment.  (Doc. No. 68.) Many of these documents relate to the grievances in question and reflect that on several occasions, Plaintiff wrote to staff members with concerns that he either was not receiving responses to his grievances or that grievances he submitted were not being handled properly.  (See, e.g., Doc. No. 68-1 at 78, 81, 91-100; Doc. No. 68-2 at 1-5, 13; Doc. No. 68-3 at 2, 4-44; Doc. No. 68-4 at 1-3, 8.)  Given Plaintiff's submissions, the Court concludes that a genuine issue of fact exists as to whether the grievance process was rendered unavailable to Plaintiff such that his failure to exhaust certain grievances could be excused.  Thus, the Court declines to grant summary judgment on the basis that Plaintiff failed to exhaust properly his claims regarding access to the courts, conditions of confinement, sexual assault, and excessive force against Defendants. Accordingly, the Court considers the merits of Plaintiff's claims below.

### 2. Plaintiff's Claim of Denial of Access to the Courts

Plaintiff maintains that his legal mail was destroyed during searches of his cell.  (Doc. No. 1 ¶¶ 32, 44, 60, 72.)  It appears that Plaintiff is raising a First Amendment claim for denial of the right of access to the courts on the basis of the destruction of his legal mail.  In order to sustain such a claim, an inmate must allege an "actual injury" to his litigation efforts.  See Lewis v. Casey, 518 U.S. 343, 349 (1996).  To establish an actual injury, an inmate must demonstrate that a non-frivolous legal claim had been frustrated or was being impeded.  See id.; see also O'Connell v. Williams, 241 F. App'x 55, 57 (3d Cir. 2007).  "[A]n inmate cannot establish a relevant actual injury simply by establishing that his prison's law library or legal assistance . . . is

subpar in some theoretical sense." <u>Lewis</u>, 518 U.S. at 351; <u>see also</u> <u>Monroe v. Beard</u>, 536 F.3d 198, 206 (3d Cir. 2008) (observing that a "claim rest[ing] solely on the ground that the defendants confiscated . . . legal materials" is insufficient on its face to state a denial of access to courts claim). Rather, to establish a right of access to the courts claim, a plaintiff must plead that he lost an opportunity to file a case in court and that he could not subsequently file that case after the interference with the right of access to the court ceased. <u>See</u> <u>Christopher v. Harbury</u>, 536 U.S. 403, 415 (2002).

Here, Plaintiff cannot maintain a claim of denial of access to the courts because nothing in the record establishes that he lost an opportunity to file a case in court, or that he could not subsequently file a case after the alleged interference with his right of access to the courts ceased. In support of their motion for summary judgment, Defendants have submitted a transcript of Plaintiff's deposition. (Doc. No. 60-1.) During his deposition, Plaintiff admitted that the destroyed legal papers were copies of documents relating to his then-pending Post-Conviction Relief Act ("PCRA") petition that his attorney had already filed in court on his behalf. (<u>Id.</u> at 49-51.) Thus, because Plaintiff has not provided any evidence to demonstrate an actual injury to his litigation efforts, Defendants will be granted summary judgment on his denial of access to the courts claim.

### 3.    Plaintiff's Retaliation Claims

Plaintiff also alleges that he was subjected to the following in retaliation for his use of the grievance system: excessive cell searches, loss of privileges such as showers and yard time, harassment, and over-sanctioned disciplinary custody time. (Doc. No. 1 ¶¶ 20-21, 32, 58, 69, 77, 79, 85.) Defendants assert that they are entitled to summary judgment on Plaintiff's retaliation claims because Plaintiff cannot demonstrate that he suffered adverse actions and cannot

demonstrate a causal connection between any protected activity and an adverse action. (Doc. No. 60 at 23-27.)

To state a retaliation claim under the First Amendment, a plaintiff bears the burden of satisfying three (3) elements. First, a plaintiff must prove that he was engaged in a constitutionally protected activity. See Rauser v. Horn, 241 F.3d 330, 333 (3d Cir. 2001). Second, a plaintiff must demonstrate that he "suffered some 'adverse action' at the hands of prison officials." See id. (quoting Allah v. Seiverling, 229 F.3d 220, 225 (3d Cir. 2000)). This requirement is satisfied by showing adverse action "sufficient 'to deter a person of ordinary firmness' from exercising his First Amendment rights." See id. (quoting Suppon v. Dadonna, 2013 F.3d 228, 235 (3d Cir. 2000)). Third, a prisoner must prove that "his constitutionally protected conduct was 'a substantial or motivating factor' in the decision to discipline him." See Rauser, 241 F.3d at 333-34 (quoting Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 287 (1977)).

The mere fact that an adverse action occurs after either a complaint or grievance is filed is relevant, but not dispositive, for the purpose of establishing a causal link between the two events. See Lape v. Pennsylvania, 157 F. App'x 491, 498 (3d Cir. 2005). Only when the facts of a particular case are "unusually suggestive" of a retaliatory motive will temporal proximity, on its own, support an inference of causation. See Krouse v. Am. Sterilizer Co., 126 F.3d 494, 503 (3d Cir. 1997). If a prisoner establishes a prima facie case of retaliation, the burden shifts to prison officials to show, by a preponderance of the evidence, that "they would have made the same decision absent the protected conduct for reasons reasonably related to a legitimate penological interest." See Rauser, 241 F.3d at 334. "This is often referred to as the 'same decision defense.'" Watson v. Rozum, 834 F.3d 417, 422 (3d Cir. 2016). If the prison officials

can make this showing, it defeats the retaliation claim.  See Carter v. McGrady, 292 F.3d 152, 159 (3d Cir. 2002).

Defendants concede that Plaintiff engaged in protected activity by filing grievances. (Doc. No. 60 at 24 (citing Mearin v. Vidonish, 450 F. App'x 100, 102 (3d Cir. 2011)). Defendants also concede that excessive cell searches and over-sanctioned disciplinary custody time constitute adverse actions.  (Id.)  They argue, however, that "isolated incidents of loss of yard and shower privileges and sexual harassment are not adverse actions because these actions are not more than de minimis."  (Id. at 24-25.)

To be actionable under § 1983, the adverse action "need not be great" but "must be more than de minimis."  See McKee v. Hart, 436 F.3d 165, 170 (3d Cir. 2006).  Plaintiff claims that he was denied yard time on March 23, 2017, April 7, 2017, and April 10, 2017, and that he was prohibited from using the shower on March 23, 2017.  (Doc. No. 1 ¶¶ 69-71.)  Generally, however, "the loss of a single shower is too de minimis" to constitute adverse action because it would not deter a similarly situated individual from exercising his or her constitutional rights. See Phelan v. Durniak, No. 9:10-CV-666 (FJS/RFT), 2014 WL 4759937, at *16 (N.D.N.Y. Sept. 24, 2014) (citations omitted); see also Hursey v. Klinesmith, No. 1:10-cv-1277, 2011 WL 2580403, at *7 (W.D. Mich. June 28, 2011) (noting that "the denial of a shower on one occasion . . . is not a sufficiently adverse action").  Likewise, the loss of yard time on three (3) occasions is too de minimis to constitute adverse action.  See, e.g., Burgos v. Canino, 358 F. App'x 302, 307 (3d Cir. 2009) (concluding that denial of recreation period did not rise to the level of adverse action).  Furthermore, verbal harassment does not constitute adverse action for purposes of a retaliation claim under the First Amendment.  See Keziah v. Superintendent Kerestes, No. 3:15-2171, 2015 WL 8488426, at *2 (M.D. Pa. Dec. 10, 2015) (citing Burgos, 358 F. App'x at 306).

While Defendants concede that excessive cell searches and over-sanctioned disciplinary custody time constitute adverse actions, they argue that Plaintiff has not demonstrated a causal connection between these actions and his act of filing grievances. (Doc. No. 60 at 25-27.) While causation may be established by direct or circumstantial evidence, "motivation is almost never subject to proof by direct evidence." See Watson v. Rozum, 834 F.3d 417, 422 (3d Cir. 2016). Thus, motivation is typically demonstrated by "evidence of either (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing that suggests a causal link." See id.

Plaintiff has not met his burden of showing that Defendants were motivated by retaliation when they subjected him to alleged excessive cell searches and over-sanctioned disciplinary custody time. See Hannon v. Speck, No. 87-3212, 1988 WL 131367, at *4 (E.D. Pa. Dec. 6, 1988) (noting that "[i]n bringing a § 1983 action alleging such retaliation, an inmate faces a substantial burden in attempting to prove that the actual motivating factor . . . was as he alleged"), aff'd, 888 F.2d 1380 (3d Cir. 1989). Plaintiff's own complaint indicates that the alleged excessive cell searches began on February 24, 2017, the very day that officers observed Plaintiff engaging in self-mutilation by cutting himself with a piece of glass. (Doc. No. 1 ¶¶ 14, 21.) As discussed infra, such cell searches were appropriate given Plaintiff's history of self-harm.

As to the disciplinary custody sanction, Plaintiff argues that Defendant Pilosi violated DOC policy because, as a mentally ill inmate, Plaintiff should not have received over thirty (30) days of disciplinary custody. (Doc. No. 1 ¶¶ 77-78.) In support of their motion for summary judgment, Defendants have provided a copy of DOC policy DC-ADM 801, which governs inmate discipline. (Doc. No. 60-2.) Upon review of this policy, the Court agrees with

Defendants that no such policy limiting the amount of disciplinary custody given to mentally ill inmates exists. Instead, the policy provides that if an inmate has been classified as being seriously mentally ill or is included on the mental health/intellectual disability roster, "the Hearing Examiner should consider the assessment of mental health staff and any recommendations obtained from the Mental Health/Disability Consultation for Disciplinary Disposition Form" before imposing sanctions. (Id. at 26 (emphasis omitted)).

In any event, a finding of guilt on a misconduct charge, combined with "a meaningful written statement of the evidence relied on and the reasons for the actions taken," establishes a "quantum of evidence" of misconduct sufficient to warrant summary judgment on a retaliation claim. See Williams v. Folino, 664 F. App'x 144, 148-49 (3d Cir. 2016) (quoting Watson, 834 F.3d at 426; Dyson v. Kocik, 689 F.2d 466, 467 (3d Cir. 1982)). In support of their motion for summary judgment, Defendants have submitted copies of the documentation pertaining to Plaintiff's misconduct hearing before Defendant Pilosi. (Doc. No. 53-6.) The record reflects that Defendant Pilosi sanctioned Plaintiff to a total of 180 days of disciplinary custody after Plaintiff pled guilty to assault and threatening an employee with bodily harm. (Id. at 6-7.) The Mental Health/Disability Consultation for Disciplinary Disposition Form was made part of the record. (Id. at 8.) Plaintiff's disciplinary charges arose from an incident where he threw urine on a corrections officer and "made multiple threats to continue the act every time he gets the opportunity." (Id. at 7.) Plaintiff has presented no evidence to suggest that the sanction imposed by Defendant Pilosi was not reasonably related to a legitimate penological interest. See Overton v. Bazzetta, 539 U.S. 126, 134 (2003); see also Williams, 664 F. App'x at 148-49. Based on the record, the Court concludes that Defendants have met their burden under Rule 56 of identifying evidence that demonstrates the absence of a genuine issue of material fact as to whether

Defendants retaliated against Plaintiff for filing grievances. Accordingly, Defendants will be granted summary judgment as to Plaintiff's retaliation claims.

### 4.      Plaintiff's Eighth Amendment Claims

Plaintiff's complaint sets forth several claims under the Eighth Amendment, including unconstitutional conditions of confinement, excessive cell searches, failure to protect, sexual assault, and deliberate indifference. Defendants contend that they are entitled to summary judgment on each claim.

The Eighth Amendment prohibits the infliction of cruel and unusual punishment on prisoners. There are several types of Eighth Amendment claims, including claims of: denial of, or inadequate access to, medical care; exposure to adverse conditions of confinement; and the use of excessive force by prison guards. An Eighth Amendment claim includes both objective and subjective components. See Wilson v. Seiter, 501 U.S. 294, 298 (1991). Serious hardship to the prisoner is required to satisfy the Eighth Amendment's objective component. See id. The subjective component is met if the person or persons causing the deprivation acted with "a sufficiently culpable state of mind." See id.

### i.      Conditions of Confinement

Plaintiff contends that Defendants violated his rights under the Eighth Amendment by subjecting him to various conditions from May 16, 2017, when he was released from the medical department after a suicide attempt, until May 29, 2017. (Doc. No. 1 ¶¶ 90-96.) He alleges that during this time period, he was subjected to a cold cell with no blanket or sheets, no running water, and little food. (Id. ¶¶ 91-92.) Plaintiff also claims that the walls were smeared with feces and blood "from self mutilation." (Id. ¶ 93.) He further maintains that he was confined to the cell for twenty-four (24) hours a day without yard time. (Id. ¶ 96.)

In order to succeed on a conditions of confinement claim, a prisoner plaintiff must establish that: "(1) he was incarcerated under conditions imposing a substantial risk of serious harm, (2) the defendant-official was deliberately indifferent to that substantial risk to his health and safety, and (3) the defendant-official's deliberate indifference caused him harm." See Bistrian v. Levi, 696 F.3d 352, 367 (3d Cir. 2015). "[T]he Constitution does not mandate comfortable prisons." Rhodes v. Chapman, 452 U.S. 337, 349 (1981). Therefore, conditions of imprisonment violate the Eighth Amendment only if they, "alone or in combination . . . deprive inmates of the minimal civilized measures of life's necessities." See id. at 347. Such necessities include "adequate food, clothing, shelter, and medical care." See Farmer, 511 U.S. at 832. Thus, "extreme deprivations are required to make out a conditions-of-confinement claim." See Hudson, 503 U.S. at 9.

Even crediting Plaintiff's allegations as true, the Court concludes that Plaintiff has not demonstrated that these conditions violated his Eighth Amendment rights. Placing Plaintiff in a cell without recreation and "items he could use to either harm himself or block guards from observing his condition[, such as blankets and sheets,] was a reasonable response to his suicide threat and the need to deter such behavior." See Freeman v. Miller, 615 F. App'x 72, 78 (3d Cir. 2015). Moreover, while exposure to cold temperatures could potentially rise to a constitutional violation, see id. at 79, Plaintiff has provided no evidence that such exposure caused him harm or that he informed Defendants about any negative effects he suffered from the cold, which therefore demonstrates that Defendants were not deliberately indifferent to his health or safety. See Farmer, 511 U.S. at 834.

As to Plaintiff's claim that the cell had blood and feces smeared on the walls, Plaintiff admits this was his own doing. (Doc. No. 1 ¶ 93.) Plaintiff confirmed that it was his own doing

during his deposition, which Defendants cite in support of their motion for summary judgment. (Doc. No. 60-1 at 76.)  Plaintiff also claims that he had no running water and little food.  (Doc. No. 1 ¶¶ 90, 92.)  While the Third Circuit has recognized that "a complete or near-complete lack of access to fluids . . . would suffice to show a water-deprivation Eighth Amendment violation," see Collier v. Martinez, 474 F. App'x 870, 874 (3d Cir. 2012), it has acknowledged that the "lack of running water, without more, does not suffice to show an Eighth Amendment violation."  See id. at 874 & n.4.  Plaintiff, however, has provided no evidence to suggest that he was completely deprived of access to all fluids from May 16, 2017 through May 29, 2017.  Moreover, while Plaintiff alleges that he received little food during this time, nothing in the record establishes that Plaintiff suffered harm or that Defendants were deliberately indifferent to his health or safety.[14] See Bistrian, 696 F.3d at 367.  Accordingly, Defendants' motion will be granted as to Plaintiff's claims of unconstitutional conditions of confinement.

### ii.     Excessive Cell Searches

Plaintiff next alleges that Defendants violated his rights by subjecting him to an excessive number of cell searches in a short period of time.  (Doc. No. 1 ¶¶ 20-21, 27, 47-48.)  Plaintiff maintains that these cell searches were "being conducted only to harass" him.  (Id. ¶ 47.) Defendants contend that they are entitled to summary judgment because Plaintiff does not have a constitutionally protected interest in his cell and because their actions were penologically justified.  (Doc. No. 60 at 30-31.)

Prisoners have no right to privacy in their individual cells because such privacy rights "cannot be reconciled with the concept of incarceration and the needs and objectives of penal

---

[14] The Court further notes that Plaintiff's complaint establishes that he has a history of engaging in hunger strikes.  (Doc. No. 1 ¶¶ 52-54.)

institutions." See Hudson v. Palmer, 468 U.S. 517, 525 (1984). Nevertheless, this does not mean that searches which constitute "calculated harassment unrelated to prison needs" are permissible. See id. at 530; see also Prisoners' Legal Ass'n v. Roberson, 822 F. Supp. 185, 189 (D.N.J. 1993); Proudfoot v. Williams, 803 F. Supp. 1048, 1051 (E.D. Pa. 1992). Thus, to maintain his Eighth Amendment claim, Plaintiff must demonstrate that Defendants had a "sufficiently culpable state of mind." See Beers-Capitol v. Whetzel, 256 F.3d 120, 125 (3d Cir. 2001) (quoting Farmer, 511 U.S. at 834).

The Court finds that Plaintiff has failed to adduce evidence to create a genuine issue of material fact as to Defendants' subjective intent with regard to the cell searches. Other than his self-serving allegation, Plaintiff has provided no evidence that the cells searches were conducted solely to harass him. Moreover, Plaintiff's complaint itself establishes that these cell searches began immediately after he "began to self mutilate [by] cutting [his] wrist with a piece of glass." (Doc. No. 1 ¶ 14.) The evidence of record provided by Defendants shows that such cell searches were appropriate given Plaintiff's history of self-harm. Cf. Bronson v. Minnick, No. 02-547, 2006 WL 1670212, at *6 (W.D. Pa. June 15, 2006) (granting defendants' motion for summary judgment as to inmate plaintiff's Eighth Amendment claim regarding excessive cell searches because defendants' evidence indicated such searches were necessary because of plaintiff's "history of contraband and disciplinary charges for possession of such and possession of excess property in his cell"). Accordingly, Defendants will be granted summary judgment as to Plaintiff's claim regarding excessive cell searches.

### iii.  Failure to Protect

Plaintiff also contends that Defendants violated his Eighth Amendment rights by failing to protect him from the March 22, 2017 assault by another inmate. In order to establish a claim

for failure to protect, an inmate plaintiff must demonstrate that he was "incarcerated under conditions posing a substantial risk of harm" and that the officials in question acted with "deliberate indifference" towards his health and safety.  See Farmer, 511 U.S. 825, 832 (1994).  To show that an official acted with deliberate indifference, a plaintiff must show that the official was actually "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists," and that the official also drew that inference.  See id. at 837.  An official's "failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot . . . be condemned" under the Eighth Amendment.  See id. at 838.  Moreover, the inmate plaintiff must prove more than that he had a fight with another inmate, see Beard v. Lockhart, 716 F.2d 544, 545 (8th Cir. 1983), and "mere negligent conduct that leads to serious injury of a prisoner by prisoner does not expose a prison official to liability."  See Davidson v. Cannon, 474 U.S. 344, 347-48 (1986).

Defendants assert that they are entitled to summary judgment because Plaintiff has not pointed to sufficient evidence to support a failure to protect claim.  (Doc. No. 60 at 32-33.)  In support of their argument, Defendants have provided surveillance video from the March 22, 2017 incident.  In response, Plaintiff has provided copies of the incident reports from that date.  (Doc. No. 68-1 at 17-32.)  Furthermore, as noted above, Plaintiff avers in his verified complaint that Defendant Florey overheard the other inmate threaten to stab him and then, when Plaintiff requested to leave, proceeded to escort Plaintiff past the other inmate, who was uncuffed.  (Doc. No. 1 ¶¶ 40-41.)

At the summary judgment stage, the Court must generally:

take the facts in the light most favorable to the non-moving party when disposing of a summary judgment motion.  However, a "limited exception" to this general rule exists where the nonmovant's version of the events may be disregarded to the extent those facts are "blatantly contradicted" by the summary judgment record.

Millbrook v. United States, No. 3:15-CV-0832, 2016 WL 4734658, at *9 (M.D. Pa. Sept. 12, 2016); see also Scott v. Harris, 550 U.S. 372, 380 (2007) (noting that "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment"). This Court has noted that "[w]hile video footage has been found to establish this 'limited exception,' not all video footage or mechanical depictions will allow a court to disregard the non-movant's version of the events." See Millbrook, 2016 WL 4734658, at *9. For example, "courts have declined to apply the limited exception set forth in Scott v. Harris where a videotape or other mechanical depiction does not capture the whole incident . . . or where the videotape or mechanical depiction is susceptible to multiple reasonable interpretations." See Patterson v. City of Wildwood, 354 F. App'x 695, 698 (3d Cir. 2009); see also Mills v. City of Harrisburg, 589 F. Supp. 2d 544, 552 n.5 (M.D. Pa. 2008) (concluding that audio recording did not qualify for the Scott limited exception because it was susceptible to multiple reasonable interpretations), aff'd, 350 F. App'x 770 (3d Cir. 2009).

After reviewing the surveillance camera footage, as well as the incident reports, the Court concludes that even if Defendant Florey overheard the other inmate threaten to stab Plaintiff, he and the other officers did not act with deliberate indifference to Plaintiff's safety. The video depicts the officers beginning to escort Plaintiff out of the room when the other inmate jumps behind Plaintiff and begins to stab him in the head. Three (3) officers immediately respond and separate Plaintiff and the other inmate. Thus, while Plaintiff was injured by the assault, Defendants have satisfied their burden under Rule 56 of identifying evidence that demonstrates the absence of a genuine issue of material fact as to whether Defendants acted reasonably in

response to the risk of harm by attempting to remove Plaintiff from the room.[15] See Farmer, 511 U.S. at 844 (noting that "prison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted"). At most, Plaintiff argues that Defendants were negligent by not handcuffing the other inmate before Plaintiff was escorted out of the room; however, as noted above, "mere negligent conduct that leads to serious injury of a prisoner by a prisoner does not expose a prison official to liability under Section 1983." See Davidson, 474 U.S. at 347-48. Accordingly, Defendants' motion will be granted as to Plaintiff's failure to protect claim.

### iv.    Sexual Assault

Plaintiff raises two (2) claims of sexual assault in his complaint. First, Plaintiff alleges that on February 24, 2017, during the incident at his cell, Defendant Cleveland pulled down Plaintiff's pants and inserted an unknown object into his rectum. (Doc. No. 1 ¶ 11.) Second, Plaintiff maintains that on April 10, 2017, after he was taken to the medical cell and placed on the bed, unknown officers inserted their fingers into his rectum. (Id. ¶¶ 64, 66.)

"A corrections officer's intentional contact with an inmate's genitalia or other intimate area, which serves no penological purpose and is undertaken with the intent to gratify the officer's sexual desire or humiliate the inmate, violates the Eighth Amendment." Banks v. Rozum, 639 F. App'x 778, 782 (3d Cir. 2016) (quoting Crawford v. Cuomo, 796 F.3d 252, 257

---

[15] In his brief in opposition to Defendants' motion for summary judgment, Plaintiff vaguely argues that he told staff members that he was in fear for his safety "hours before being stabbed" and referenced "an incident that occurred in 2013." (Doc. No. 77 at 10.) Without more information and supporting evidence, however, Plaintiff's assertion is insufficient to create a genuine issue of material fact as to whether Defendants were deliberately indifferent to his safety. As noted above, this Court is not "required to accept unsupported, self-serving testimony as evidence sufficient to create a jury question." See Hammonds, 2016 WL 1621986, at *3 (citing Brooks, 999 F.2d at 172).

(2d Cir. 2015)).  The Third Circuit recently held that "a single incident of sexual abuse, if sufficiently severe or serious, may violate an inmate's Eighth Amendment rights no less than repetitive abusive conduct."  See Ricks v. Shover, 891 F.3d 468, 475 (3d Cir. 2018) (quoting Crawford, 796 F.3d at 257).  In order to establish a sexual assault/abuse Eighth Amendment claim, the inmate plaintiff must demonstrate that the official in question "acted 'maliciously and sadistically for the very purpose of causing harm.'"  See id. (quoting Whitley v. Albers, 475 U.S. 312, 319-20 (1986)).  Moreover, whether sexual contact is objectively, sufficiently serious can depend on "[t]he scope, place, and timing of the offensive conduct" as well as its severity.[16]  See id. at 478.

In support of their motion for summary judgment, Defendants have provided video evidence of the incidents that occurred on February 24, 2017 and April 10, 2017.  They argue that they are entitled to summary judgment on Plaintiff's sexual assault claims because the video evidence blatantly contradicts Plaintiff's allegations.  (Doc. No. 60 at 33-34.)  Plaintiff disagrees, arguing that the video of the February 24, 2017 incident "loses focus" right when Defendant Cleveland inserts his hand into the aperture of Plaintiff's cell.  (Doc. No. 77 ¶ 5.)

Upon review of this video evidence, the Court agrees with Defendants' contention that such evidence blatantly contradicts Plaintiff's allegations of sexual assault.  See Scott, 550 U.S. at 380.  As to the February 24, 2017 incident, the Court notes that the camera does not lose focus as Plaintiff claims.  The video depicts Defendant Cleveland briefly reach through the aperture, take hold of one of Plaintiff's hands, and pull it through the aperture so that the handcuffs could

---

[16] The Third Circuit noted that "objectively serious sexual conduct would include sexualized fondling, coerced sexual activity, combinations of ongoing harassment and abuse, and exchanges of sexual activity for special treatment or to avoid discipline."  See Ricks, 891 F.3d at 478. However, "[i]n context, including whether it violates established prison procedures, other sexualized touching may also be objectively serious."  See id.

be removed. Likewise, the video evidence clearly shows that at no time did any of the officers involved in the April 10, 2017 cell extraction and Plaintiff's placement in the medical cell put a finger inside Plaintiff's rectum. Thus, because Plaintiff's allegations are blatantly contradicted by the video evidence, such that "no reasonable jury could believe [them]," the Court will not adopt his version of the facts for purposes of summary judgment. See id. Accordingly, the Court will grant Defendants' motion as to Plaintiff's claims of sexual assault.

### v.      Excessive Force

Plaintiff raises two (2) claims of excessive force in his complaint. First, Plaintiff alleges that on February 24, 2017, during the incident at his cell, Defendant Cleveland "violently" pulled the tether attached to the handcuffs, reached into the aperture and tightened the handcuffs, and grabbed his thumbs, bending them backwards in an attempt to break them. (Doc. No. 1 ¶¶ 9-10.) Plaintiff also states that Defendants Gates used an excessive amount of O/C spray during the incident. (Id. ¶ 13.) Second, Plaintiff alleges that on April 10, 2017, during his transport to the medical department, the officer pushing the restraint chair punched him in the head. (Id. ¶ 63.) Plaintiff also claims that after he was removed from the restraint chair, officers twisted his wrist, knocked him to the floor, punched and kicked him in the face, and stuck a finger in his eye. (Id. ¶¶ 65-66.)

The Eighth Amendment's protection against cruel and unusual punishment is the "primary source of substantive protection in cases where an inmate challenges a prison official's use of force as excessive and unjustified." See Brooks v. Kyler, 204 F.3d 102, 105 (3d Cir. 2000). The standard governing the Court's inquiry as to whether a plaintiff has a viable excessive force claim is "whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." See Giles v.

Kearney, 571 F.3d 318, 326 (3d Cir. 2009) (quoting Whitley v. Albers, 475 U.S. 312, 319 (1986)).

The issue of whether excessive force was used is one that, in proper circumstances, can be determined as a matter of law.  In such cases, summary judgment is appropriate when "it appears that the evidence, viewed in the light most favorable to the plaintiff, will [not] support a reliable inference of wantonness in the infliction of pain."  See Brooks, 204 F.3d at 106 (quoting Whitley, 475 U.S. at 322).  In making this determination, courts are tasked with evaluating the following Whitley factors:

> (1) the need for the application of force; (2) the relationship between the need and the amount of force that was used; (3) the extent of injury inflicted; (4) the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible officials on the basis of the facts known to them; and (5) any efforts made to temper the severity of a forceful response.

Id.  The United States Supreme Court has stated:
> [W]hen prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency are always violated . . . whether or not significant injury is evident.  Otherwise, the Eighth Amendment would permit any physical punishment, no matter how diabolic or inhuman, inflicting less than some arbitrary quantity of injury.

Wilkins v. Gaddy, 559 U.S. 34, 37 (2010) (quoting Hudson v. McMillian, 503 U.S. 1 (1992)).

When a court considers such claims, the reasonableness of a particular use of force often depends upon the relevant factual context and must be "judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight."  See Graham v. Connor, 490 U.S. 386, 396-97 (1989); see also Fuentes v. Wagner, 206 F.3d 335, 346 (3d Cir. 2000) ("[E]ven if we concede [that an inmate] has established at most that prison officials over-reacted to the disturbance that he caused . . . any such over-reaction would still fall short of supporting a finding that prison officials acted 'maliciously and sadistically to cause harm.'").

Additionally, de minimis use of physical force does not qualify as excessive force unless the force is "repugnant to the conscience of mankind." See Brooks, 204 F.3d at 107 (citing Hudson, 503 U.S. at 6); see also Wilkins, 559 U.S. 34 (2010) (clarifying that de minimis force, rather than de minimis injury, is the dispositive issue). Not "every malevolent touch by a prison guard gives rise to a federal cause of action." See Hudson, 503 U.S. at 9.

Defendants assert that they are entitled to summary judgment on Plaintiff's excessive force claims because the use of force was reasonable and because the video evidence blatantly contradicts Plaintiff's claims. (Doc. No. 60 at 35-37.) In response, Plaintiff argues that summary judgment is inappropriate because his declaration shows "a completely needless use of force against an inmate who was handcuffed and shackled and attempting to cooperate with the orders he had been given." (Doc. No. 77 at 12.) The Court considers each incident of excessive force alleged by Plaintiff below.

Video of the February 24, 2017 incident shows the officers pulling on the tether to get Plaintiff's hands in the cell aperture so that the handcuffs can be removed. The video also shows that Plaintiff was resisting while the officers were attempting to remove the handcuffs. The video indicates that Plaintiff's thumbs were never bent backwards as he claims. Moreover, only a few short bursts of O/C spray were administered during the incident in an attempt to have Plaintiff comply with orders. This Court has previously noted that isolated, discrete uses of O/C spray do not establish an Eighth Amendment claim. See, e.g., Luciano v. Lindberg, No. 1:CV-09-1362, 2012 WL 1642466, at *19 (M.D. Pa. May 10, 2012); Picozzi v. Haulderman, No. 4:08-CV-926, 2011 WL 830331, at *5 (M.D. Pa. Mar. 3, 2011). After viewing the video, the Court concludes that there is nothing "that could even be remotely characterized as in any way malicious or sadistic, the essential prerequisite to an Eighth Amendment violation." See

McMillian v. Walsh, No. 1:11-CV-2223, 2014 WL 310386, at *11 (M.D. Pa. Jan. 28, 2014). The Court simply cannot say that any "reasonable finder of fact could view the video of the incident and determine that [Defendants] acted maliciously and sadistically." See Tindell v. Beard, 351 F. App'x 591, 596 (3d Cir. 2009).

The video of the April 10, 2017 incident also contradicts Plaintiff's account and, therefore, renders summary judgment in favor of Defendants proper. Specifically, the video shows that the officer pushing the restraint chair never punched Plaintiff in the back of the head. Moreover, the video demonstrates that Plaintiff's wrists were never twisted and that no fingers were placed in his eye. Furthermore, the video shows that the officers were not the ones to knock Plaintiff to the ground. Rather, Plaintiff attempted to get away from the officers and was placed on the ground so that officers could regain control. The video does not show the officers punching and kicking Plaintiff in the face, as Plaintiff claims. Thus, because the video evidence does not support Plaintiff's allegations regarding the events of April 10, 2017 and, as a result, "no reasonable jury could believe [them]," the Court will not adopt Plaintiff's version of the facts for purposes of summary judgment. See Scott, 550 U.S. at 380. In sum, Defendants have satisfied their burden under Rule 56 of identifying evidence that demonstrates the absence of a genuine issue of material fact as to Plaintiff's claims of excessive force regarding the incidents that occurred on February 24, 2017 and April 10, 2017. Accordingly, the Court will grant Defendants' motion as to Plaintiff's excessive force claims.

IV.     CONCLUSION

For the foregoing reasons, the Court will grant Defendants' motion for summary judgment in its entirety. (Doc. No. 52.) An appropriate Order follows.